THURSDAY, JANUARY 27, 2000
SENTENCING - PART II

briefly, we are obligated to recommend 63 months. This has been a difficult case. I think it goes without saying that it's hard to imagine how a young man such as this Defendant got himself into so much trouble after apparently having a potential career in law enforcement himself. I think the 63 month level, Your Honor, will provide adequate protection in the community. It will give Mr. Dion some time to think, to retrain himself for a productive life, and I do think that the bottom of the guideline range would be a fair sentence.

THE COURT: All right. Mr. Dion, would you stand up, please, while the Court pronounces sentence.

(DEFENDANT COMPLIES)

THE COURT: I will say I was very impressed by your statement, Mr. Dion. I have no way of being able to look into your heart or mind to know how sincere you are, but you struck me as being very sincere in what you said. And the person that I heard make that statement doesn't seem to quite fit the person that is portrayed in all the information relating to this case. Even if you are sincere, you are absolutely correct

THURSDAY, JANUARY 27, 2000
SENTENCING - PART II

that this may be, oddly enough, one of the best things to happen in your life because it may have saved you from a much worse fate. You're young enough that you have a chance to turn things around if that's really what you intend to do.

I'm going to go along with the recommendation that you be given the minimum sentence under the guidelines. I hereby commit you to the custody of the Bureau of Prisons for a period of 63 months on each of the counts of conviction in both cases, Counts Two through Six in the case Number 99-032 and Counts One, Seventeen and Nineteen in the case Number 99-033. Those sentences will be served concurrently with one another.

Following the completion -- I will ask the Clerk to also note on the judgment form the Court's recommendation that Mr. Dion be assigned to an institution that has a program of drug abuse and gambling treatment and counseling.

Following the completion of your sentence, I place you on supervised release for a period of three years on each of the counts of conviction. Those terms also to be served concurrently with one another. As conditions of

THURSDAY, JANUARY 27, 2000
SENTENCING - PART II

your supervised release, I will require, first of all, that you pay the cost of supervision. I realize you don't have much in the way of assets now. I'm not going to impose much of a fine, but when you are released from prison, there's no reason why someone who's able-bodied and of the intelligence that you obviously possess cannot obtain employment and relieve the taxpayers of the burden of paying for your supervision. In fact, I think it's an important part of your rehabilitation, that you gain employment and that will give you incentive to do so.

As a further condition of your supervised release will be that, if it's determined necessary by the Probation Department that you will continue to undergo a program of counseling and treatment for gambling and drug abuse, if you haven't already licked that problem during your time in prison, which I hope you will.

I will impose a fine in the amount of one hundred dollars on each of the counts of -- excuse me, on Count Two in case 99-032 and Count One in case 99-033. I will not impose a fine on any other counts because the

THURSDAY, JANUARY 27, 2000
SENTENCING - PART II

presentence report indicates that you don't have much in the way of assets now, and that would only be a punishment against your family.

I am required to impose a special assessment in the amount of one hundred dollars on each of the counts of conviction in both cases. So, that's seven hundred dollars, is that correct?

MR. GALE: Eight hundred dollars, Your Honor.

MR. MURPHY: Eight hundred.

THE COURT: Eight hundred dollars. All right. You may be seated, Mr. Dion.

(DEFENDANT COMPLIES)

THE COURT: You have the right to appeal your sentence, Mr. Dion, because even though you plead guilty, the Court did reject your argument or your counsel's argument that there should have been a downward adjustment for your role in the offense. Arguments were also made that you should have had a downward departure. I don't believe you have any grounds to appeal that, but you talk with Mr. Murphy about that after, and if he thinks otherwise, he can so advise you. I should tell you that if you

THURSDAY, JANUARY 27, 2000
SENTENCING - PART II

do decide that you wish to appeal, if there's anything here to appeal, you must file a notice of appeal within ten days. If you don't file a notice of appeal within that time, you will be considered to have forfeited your right to appeal. You understand what I'm saying?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I'm going to have the Clerk give to you and Mr. Murphy letters that have already been drafted. Your letter simply states that you have instructed your attorney that you wish to appeal. And if you decide that that's what you want to do, you should sign that letter within the ten-day period, drop it in the mail so it'll come back to the Court, and the Court will know that you have told Mr. Murphy that you wish to take an appeal. If we don't get the letter from you within the ten days or shortly thereafter, then that will be an indication that you decided that you did not wish to appeal.

Mr. Murphy will be furnished with a letter that I'm sure you've seen before.

MR. MURPHY: Yes, I have, Judge.

THE COURT: And your letter, if

THURSDAY, JANUARY 27, 2000
SENTENCING - PART II

you discuss this with Mr. Dion and he decides he doesn't wish to appeal, then you should send that letter back to the Court within ten days. If, on the other hand, he decides he does want to appeal, then it would be your obligation to file a notice of appeal in his behalf within the ten-day period.

All right. Do you have anything further, Mr. Gale?

MR. GALE: I have two motions, Your Honor. I believe the Clerk has the original of the Government's motion to dismiss counts, those counts which were not subject to the plea agreement. They are specified in the document, and we would so move that those counts be, pursuant to the plea agreement, dismissed.

THE COURT: I take it there's no objection to that, Mr. Murphy?

MR. MURPHY: No objection, Judge.

THE COURT: All right. The motion to dismiss the remaining counts is granted. Do you have anything else, Mr. Gale?

MR. GALE: Yes, Your Honor. During the past two weeks, in particular, the Government supplied a vast array of both

documentary and audio tape-type discovery. Some of it voluntarily and some of it pursuant to the Court's instructions. I am asking the Court to order the return of the two categories, and I can put this in writing as well, should the Court wish that.

There are three sets of tapes. The original discovery last April provided tape recordings of Robert Atamian and this Defendant relative to germane issues, as well as other tapes in which this Defendant's voice appeared. We're not asking for those back. Those go directly to the cases which have now been resolved. What we're asking for are the 39 tape recordings, I believe in number, which are the tape recordings and logs relative to the electronic surveillance conducted in Johnston where the lead Defendant was Anthony St. Laurent. Those tapes have all kinds of very sensitive information, hardly any of which pertains to this Defendant and certainly none of that was used in support of the Defendant's motions and argument before the Court at sentencing.

Likewise, more recently, we provided about an additional 26 tapes on which

THURSDAY, JANUARY 27, 2000
SENTENCING - PART II

the Defendant's voice appears nowhere. That is other investigative activity conducted by the FBI involving Mr. St. Laurent or Mr. Atamian or somebody else other than this Defendant. Again, none of those tapes were used relative to the sentencing hearing. Again, they have sensitive information on them, and I think they should be returned to the Government.

THE COURT: Who has them now?

MR. GALE: Mr. Murphy.

MR. MURPHY: Judge, I have them. If Agent Doherty wants to come over, say nine o'clock tomorrow morning, they'll all be put in separate boxes. As long as I can keep the ones that were specifically to Mr. Dion, I have no problems giving them back to Agent Doherty.

THE COURT: The Court will instruct you, then, to return those tapes, Mr. Murphy, with the caveat, Mr. Gale, that those tapes should be preserved in the event, which it may not be very likely one, that somehow this issue is raised on appeal or otherwise, the tapes ought to be available for the Court of Appeals if that were necessary.

MR. GALE: I can assure the Court

THURSDAY, JANUARY 27, 2000
SENTENCING - PART II

they will be maintained that way. They are not the originals, in any event, and the originals will be maintained for not less than ten years.

THE COURT: All right. Is there anything else?

MR. MURPHY: No, Your Honor.

MR. GALE: No, Your Honor.

THE COURT: All right. We'll take a brief recess and, then, if Magistrate Judge Hagopian and his group wants to stay around, I'll come back on the bench and be happy to answer any questions that they might have.

THE CLERK: All rise.

(COURT ADJOURNED)